**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Vivian Hsiung,<br><br>    Plaintiff,<br><br>  v.<br><br>The Walt Disney Company,<br><br>    Defendant | 2:18-cv-4162-VAP-JPRx<br><br>**Order GRANTING Defendant's Motion for Summary Judgment (Dkt. 54)** |

  Before the Court is Defendant The Walt Disney Company's ("Defendant") Motion for Summary Judgment, filed July 6, 2020. ("Motion," Dkt. 54). Plaintiff Vivian Hsiung ("Plaintiff") failed to oppose the Motion by the deadline, and Defendant filed a Reply on July 20, 2020. ("Reply," Dkt. 61). On July 21, 2020[1], Plaintiff filed an Opposition, ("First Opposition," Dkt. 68), to which Defendant responded with a Sur-Reply, filed on July 22, 2020, ("Sur-reply," Dkt. 63). On July 23, 2020, Plaintiff filed a second late opposition, ("Second Opposition," Dkt. 67), to which Defendant responded with a second Sur-Reply, filed on July 27, 2020, ("Second Sur-Reply," Dkt. 65). Defendant also filed evidentiary objections to Plaintiff's second late opposition. (Dkt. 66).

---

[1] Defendant's Sur-Reply states that the late Opposition was filed on July 21, 2020, though it was not docketed until July 23, 2020. The Court adopts Defendant's dates to accurately reflect the sequence of filings and responses.

1

After considering all papers filed in support of, and in opposition to, the Motion, the Court deems this matter appropriate for resolution without a hearing pursuant to Local Rule 7-15. The Court hereby GRANTS the Motion.

## I. BACKGROUND

### A. Procedural History

On May 17, 2018, Plaintiff filed a complaint against Defendant for employment discrimination. (Dkt. 1). On August 7, 2018, the Court issued an order to show cause why the case should not be dismissed for lack of subject matter jurisdiction, to which Plaintiff failed to respond. The Court dismissed the case on August 29, 2018. (Dkt. 7). On September 26, 2018, the Court conditionally granted Plaintiff's Motion to Vacate Dismissal, ordering Plaintiff to file an Amended Complaint setting forth the basis for the Court's jurisdiction. (Dkt. 13). Plaintiff filed an Amended Complaint on October 30, 2018, but did not serve it. ("Amended Complaint," Dkt. 17). A year after the filing of the action, on May 30, 2019, the Court again issued an order to show cause, this time why the case should not be dismissed for failure to prosecute. (Dkt. 24). Plaintiff responded timely. (Dkt. 28).

In her Amended Complaint, Plaintiff raised only one claim for employment discrimination on the basis of citizenship status. As Defendant notes, however, "[the Ninth] Circuit construes pro se complaints more liberally than attorney-drafted pleadings, particularly in civil rights cases." (Dkt. 54 at 14). The Court, like Defendant, therefore "liberally construes" Plaintiff's Amended Complaint to "plead[] three discrete discrimination

claims, namely, that Plaintiff was discriminatorily denied the DBA position: (1) because of her age; (2) because of her Taiwanese national origin; and (3) because of her citizenship." (*Id.*) (internal citations omitted).

Now, after numerous continuances, Defendant has filed the instant Motion for Summary Judgment, to which Plaintiff has failed to respond timely, instead submitting numerous documents after the briefing deadline. (Dkts. 67, 68).[2] Plaintiff has not provided good cause for her late filing, instead stating that she "was busy" when she received Defendant's Motion. (Dkt. 68 at 1). Nevertheless, as Defendants had the opportunity to respond, the Court considers Plaintiff's First and Second Oppositions as though they had been filed timely.[3]

---

[2] As Defense Counsel correctly notes, "[i]t is not opposing counsel's role to advise a pro se plaintiff about the substantive or procedural law." (Dkt. 63 at 2). Nevertheless, "defense counsel did identify for Plaintiff not only the exact Local Rule which would tell her when her MSJ Opposition was due, but identified where a copy of that Local Rule could be found in Defendant's moving papers." (Id.). Plaintiff still failed to file a timely opposition.

[3] Plaintiff also filed a *third* opposition brief on August 5, 2020, more than three weeks after the deadline to file an opposition and, indeed, after the date noticed for hearing the original summary judgment Motion. (Dkts. 70-74). The brief largely repeats previously filed oppositions. The Court does not consider this late filing. *See Anderson v. AMR*, 348 F. App'x 322, 323–24 (9th Cir. 2009) (finding that "[t]he district court did not abuse its discretion in refusing to consider [Plaintiff's] second untimely filed opposition to summary judgment" where "[Plaintiff] provided no justification for why the opposition was filed late. Given that the district court did accept [Plaintiff's] first late filed opposition, it was well within its discretion to reject the second, so-called 'amended' version.").

**B. Relevant Factual Background**

To the extent certain facts or contentions are not mentioned in this Order, the Court has not found it necessary to consider them in reaching its decision. In addition to considering the evidentiary objections raised by the parties, the Court has reviewed independently the admissibility of the evidence that both parties submitted and has not considered evidence that is irrelevant or inadmissible. At the summary judgment stage, a district court should "focus on the admissibility of the [evidence's] contents" and not the form in which the evidence is presented—it is sufficient that a party will be able to produce evidence in its admissible form at trial. *See Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Block v. City of Los Angeles*, 253 F.3d 410, 418–19 (9th Cir. 2001). Moreover, "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and thus need not be considered on a motion for summary judgment. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006).

"In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy." L.R. 56-3. Defendant filed a Statement of Undisputed Facts in support of the instant motion ("SUF," Dkt. 55), and Plaintiff provided a statement of disputes in response, *see* L.R. 56-2, (Dkt. 67).

### C. Plaintiff's First Opposition

As a preliminary matter, the Court notes that Plaintiff's (late) First Opposition does not address the merits of the summary judgment motion, and is instead an explanation for Plaintiff's failure to comply with the briefing schedule. (See Dkt. 68). Defendant, in its First Sur-Reply argues that: "Nothing in that late Opposition either raises a triable issue of material fact or establishes any other grounds to deny or delay disposing of Defendant's Motion." (Dkt. 63 at 1). The Court agrees. The Court, in its discretion, will consider both of Plaintiff's late filed Oppositions, despite the fact that they were filed past the deadline. Plaintiff's First Opposition and Defendant's First Sur-Reply, addressing Plaintiff's delay, are therefore, in effect, moot. The remainder of this Order will address Plaintiff's Second Opposition and Defendant's Second Sur-Reply.

### D. Plaintiff's Second Opposition

In its Evidentiary Objections to Plaintiff's Second Opposition, (Dkt. 66), "Defendant objects to all of Plaintiff's bald assertions of supposed fact in her Opposition Memorandum and response to Defendant's Undisputed Facts, on the grounds that none are either contained in a declaration, affidavit or other qualifying evidentiary material (Fed. R. Civ. Proc., Rule 56(c)(1)), much less being supported by facts establishing Plaintiff's personal knowledge of what she is asserting." (Dkt. 66 at 2). The Court has reviewed Plaintiff's statement of disputed facts, and agrees that Plaintiff's assertions are not supported by admissible evidence.

In several places, Plaintiff cites as support for her assertions "400 pages of discovery-related documents," instructing the Court to "please ask defendant to produce via e-filing due to the large quatities [*sic*] of paper involved -plaintiff has tried and failed, it is impossible to produce 400 pages physical mails -not just 400 but 800 pages because of the two copies filing requirement." (Dkt. 67 at 3). Yet "judges are not like pigs, hunting for truffles buried in briefs." *See Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 987 (9th Cir. 2011) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) (per curiam)). "We review only issues which are argued specifically and distinctly in a party's [ ] brief." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994). Simply alluding vaguely to a 400-page document does not qualify as providing a "specific" or "distinct" argument, and the Court concludes that Plaintiff has provided insufficient evidentiary support. *See International Longshoremen's Ass'n, AFL–CIO v. Davis*, 476 U.S. 380, 398 n.14 (1986) ("[I]t is not [the Court's] task sua sponte to search the record for evidence to support the [parties'] claim[s]."). The Court, therefore, disregards each of Plaintiff's assertions relying exclusively on the "400 pages of discovery-related documents."

Furthermore, where Plaintiff does cite to specific exhibits, a review of the attached exhibits reveals that they are not permissible on summary judgment, as they are not authenticated. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (denying summary judgment on Plaintiff's claim because Plaintiff's exhibits in support of the claim were "inadmissible due to inadequate authentication or hearsay"). As Defendants argue, Plaintiff provided "no authenticating declaration, nor is the format anything

that could make it self-authenticating," because "the font is identical to other materials she submitted in the same document." (Dkt. 66 at 1-2). In some cases, "the supposed email contains no FROM, SENT, TO or SUBJECT line headings, familiar to bona fide emails." (*Id.*). (*See* Dkt. 67 at 16 ("Exh Job Description")). The same is true of the exhibits purporting to show email communications between Plaintiff and Defendant, in Plaintiff's First Opposition. (*See* Dkt. 68). The Court concludes, therefore, that Plaintiff's supporting documentation for her objections to Defendant's Statement of Undisputed Facts presented in her Second Opposition to Defendant's Motion for Summary Judgment is inadmissible. Thus, Plaintiff has failed to raise a triable issue of material fact. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 784 (9th Cir. 2002) (holding that Plaintiff "[could not] raise a triable issue of material fact as to any of the counts in her Complaint" because her "exhibits [were] mostly inadmissible due to lack of authentication or hearsay").

Local Rule 56 allows the Court to find that "the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy *except to the extent* that such material facts are (a) included in the 'Statement of Genuine Issues' *and* (b) controverted by declaration or other written evidence filed in opposition to the motion." Local Rule 56–3 (emphasis added). Given Plaintiff's failure to provide any admissible support her statement of genuine issues of material facts, the Court is entitled to deem all of Defendant's undisputed facts uncontroverted if they are supported by admissible evidence. *See Willis v. Aviles*, No. CV 10-6357-SVW (JPR), 2012 WL 13005818, at *3 (C.D. Cal. July 17, 2012) ("If a

party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]")

**E. Uncontroverted Facts**

The following material facts are supported adequately by admissible evidence and are uncontroverted. They are "admitted to exist without controversy" for the purposes of the parties' motions. *See* Local Rule 56-3.

- In December 2016, Defendant sought to fill a position for a Senior Oracle database administrator contract position ("DBA" position or role), and contacted the Contingent Workforce Management ("CWM") for help to fill the position. (Dkt. 54 at 7).
- "CWM locates candidates by submitting openings to targeted suppliers and staffing agencies and soliciting resumes of qualified candidates. CWM does not request or maintain any information about a candidate's national origin or age. If a candidate is selected through this process, CWM contacts the agency which supplied (and ultimately will employ) the successful candidate to extend an offer of engagement." (*Id.*).
- All candidate resumes were forwarded to Willy Wong, Manager of Database Services at Disney. (*Id.*).
- Triad Group, a staffing agency, sent Plaintiff's resume to Mr. Wong on December 21, 2016. (*Id.*).

- "Only the two candidates considered most qualified by manager Willy Wong were selected for interviews: Virender Jain ("Virender")[4] and Manoj Jain ("Manoj"). Plaintiff was not one of those finalists." (SUF 7).
- In January 2017, Mr. Wong offered the job to Virender, as he was local to Los Angeles and Manoj was not local and was unwilling to relocate. (SUF 9).
- "Shortly before Virender was scheduled to start, he became unexpectedly unavailable and Mr. Wong determined he needed to engage a different candidate." (SUF 10).
- Mr. Wong had to solicit candidates for the DBA position again in February 2017. He solicited those candidates from staffing agencies and from a consulting firm. (SUF 12).
- "On February 13, 2017, Plaintiff's resume was again submitted, this time by staffing agency Aplumina LLC." (SUF 13).
- "On March 6, 2017, after the interviews and after consulting with his team, Mr. Wong selected Anuj" for the DBA position. (Dkt. 54 at 8).
- Mr. Wong chose Anuj for multiple reasons. First, "Anuj had recent experience providing services to a Disney affiliate, as a Sr. Consultant Database Administrator for nearly two years, whereas Plaintiff had no prior Disney experience." (SUF 17). Additionally, "Anuj had three 'Oracle professional certificate' certifications, while Plaintiff admittedly had none." (SUF 16).

---

[4] It is not clear why Defendant refers to Mr. Jain by his first name, but, to minimize confusion, the Court adopts this naming convention as well.

- The project was fast-paced, and it was important that the selected candidate be able to start immediately. (Dkt. 54 at 9). Thus, "Mr. Wong wanted to confirm not only that Anuj was able to start immediately and was eligible to work in the U.S., but that Plaintiff was, as well, just in case." (*Id.*).
- "On March 6, 2017, after the interviews and after consulting with his team, Mr. Wong selected Anuj." (*Id.*).
- The same day, on March 6, 2017, Mr. Wong emailed Plaintiff, asking her if she was a U.S. citizen. Before seeing Plaintiff's response, he emailed Aplumina the next morning, asking the representative to "check [Plaintiff]'s citizen status and" to determine whether, "if [Mr. Wong] proceed[ed], what [was] her current status of starting?" (Dkt. 54 at 9-10).
- "Anuj accepted the position, appeared eligible to work in the U.S., and could start on time." (Dkt. 54 at 10).
- On March 15, 2017, "Plaintiff emailed Mr. Wong asking why he had changed his mind after having first (supposedly) offering to engage her in the DBA role." (*Id.*). "Mr. Wong was confused, as he had never offered that role to Plaintiff." (*Id.*).
- Plaintiff was under the impression that she had been offered the role by Disney because "Ravi Tiwari, a recruiter at E-Solutions, which was a subcontractor of Aplumina, incorrectly informed Plaintiff she'd been selected for the DBA role: 'I would like to congratulate you got selected for the position of Senior Database Administrator.'" (*Id.*). "In that same email, Mr. Tiwari also asked Plaintiff for her citizenship

10

papers, claiming -- again incorrectly -- that the Company's manager had asked for them." (*Id.*).

- On March 7, 2017, at 9:11 am, Plaintiff responded to Mr. Tiwari's email, sending a copy of her Certificate of Naturalization. (Dkt. 54 at 11). She did not copy anyone from Disney on the email, "[n]or did Mr. Tiwari or anyone else separately forward that email or Plaintiff's Naturalization Certificate to Mr. Wong." (*Id.*).
- "No one 'from Disney itself' ever told Plaintiff she'd been selected to fill the DBA role." (*Id.*, quoting Plaintiff Depo., Exh.1, 41:22-25).
- When Mr. Wong contact representatives at Aplumina and E-Solutions to find out why Plaintiff thought she had been offered the job, Mr. Grover, of E-Solutions, wrote that the miscommunication "was a result of one of our over enthusiastic recruiter who jumped the gun when you asked about Vivian's Citizenship status and how soon she can join if offered." He further stated that he had "already told Vivian multiple times that this was not the case and proof of status was enquired about probably with the intention to make sure no visa sponsorship will be needed if offered permanent job with Disney on later date." He further stated that he had "communicated to [Plaintiff] multiple times also that no decision has been made" and did let her know" that she had not been selected. (Dkt. 54 at 12).
- On March 23, 2017, right before Anuj was to start, "Mr. Wong was notified that Anuj could not be contractually engaged due to an issue with his sponsor letter." (*Id.*).
- Under intense time pressure, on March 24, 2017, "Mr. Wong asked CWM . . . to please reach out one last time to Manoj, one of Mr.

11

Wong's initial, two finalists from December, to ask (once again) if Manoj might be willing to relocate to Los Angeles." (*Id.*). Manoj agreed, and was immediately offered and accepted the DBA position. (*Id.*).

## II. LEGAL STANDARD

A motion for summary judgment or partial summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. *Margolis v. Ryan*, 140 F.3d 850, 852 (9th Cir. 1998). "The moving party may produce evidence negating an essential element of the nonmoving party's case, or . . . show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir. 2000) (reconciling *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)). The nonmoving party must then "do more than simply show that there is some metaphysical doubt as to the material facts" but must show specific facts which raise a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, a court construes the evidence in the light most favorable to the non-moving party. *Barlow v. Ground*, 943 F.2d 1132, 1135 (9th Cir. 1991). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

## III.  DISCUSSION

In her Amended Complaint, Plaintiff alleged employment discrimination on the basis of her citizenship under Title VII of the Civil Rights Act. (*See* Amended Complaint at 3 ("Defendant Disney has discriminated against me in its hiring by using information on my citizenship copy to make final hiring decision.")). As discussed above, on the basis of Plaintiff's pleadings, the Court construes her Amended Complaint as raising three distinct claims for discrimination based on age, national origin, and citizenship.

Defendant argues that summary judgment should be granted because 1) "the decision maker did not know Plaintiff's age or national origin when he made his challenged decisions," 2) "the decision-maker reasonably believed other candidates were better qualified than Plaintiff, and Plaintiff will not be able to raise a triable issue of discriminatory pretext;" and 3) there exists no private right of action on the issue of citizenship discrimination, there is no private right of action for Plaintiff. (Dkt. 54 at 6).

### A.  Discrimination on the Basis of Age and National Origin

Defendant first argues that it is not liable for employment discrimination on the basis of age and national origin because "the decision

13

maker did not know Plaintiff's age or national origin when he made his challenged decisions" and therefore that "he could not possibly have discriminated against Plaintiff on those bases." (Dkt. 54 at 6).

Defendants state, correctly, that "[o]n summary judgment, the Ninth Circuit analyzes both ADEA and Title VII cases under the *McDonnell Douglas* framework, which requires, as a threshold step, that the plaintiff establish a prima facie case of discrimination." (Dkt. 54 at 14). Title VII of the Civil Rights Act provides that "[i]t shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C.A. § 2000e-2(1). The Age Discrimination in Employment Act ("ADEA") contains almost identical language, providing that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1).

As a matter of law, plaintiff cannot make such a prima facie case where a decision-maker is unaware of the basis for the alleged discrimination. *See, e.g.*, *Robinson v. Adams*, 847 F.2d 1315, 1316 (9th Cir. 1987) (affirming summary judgment against Title VII plaintiff raising race discrimination claims where "there is no showing by direct or indirect evidence that the decision-maker knew" plaintiff was Black); *Raytheon Co.*

14

*v. Hernandez*, 540 U.S. 44, 54, fn.7 (2003) ("If [the employer] were truly unaware that… a disability existed, it would be impossible for her hiring decision to have been based, even in part, on [the employee's] disability[.]").

Here, Defendant has established that the decision-maker in the hiring process, Mr. Wong, was unaware of Plaintiff's age and national origin. At her deposition, Plaintiff admitted that she first gave notice of her Taiwanese national origin or her age when she attached her Naturalization Certificate to her March 7, 2017, 9:11am email to Ravi Tiwari of E-Solutions." (Dkt. 54 at 16, citing Plaintiff Depo., Exh.1, p.45:1-18; Exhs. 1-5 and 1-6.). Defendant has provided evidence establishing that Plaintiff did not copy anyone on this email, nor did Mr. Tiwari forward it on to Mr. Wong. Indeed, there is no evidence in the record suggesting that Mr. Wong has ever seen Plaintiff's Naturalization Certificate, nor that that Mr. Tiwari participated in Mr. Wong's hiring decisions at all, much less after March 7, 2017. Thus, Defendant has established that Mr. Wong never knew Plaintiff's age or her Taiwanese nationality at any time during his decision-making process.

Moreover, even assuming Plaintiff *could* succeed in establishing a prima facie case of discrimination, under the next step in the *McDonnell-Douglas* framework, the burden shifts to the defendant to "articulate [a] legitimate, nondiscriminatory reason for the challenged actions." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123–24 (9th Cir. 2000). "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their

[challenged actions] are mere pretext for unlawful discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

Here, Defendant has established that Mr. Wong chose to hire Anuj, rather than Plaintiff, for multiple reasons.  First, "Anuj had recent experience providing services to a Disney affiliate, as a Sr. Consultant Database Administrator for nearly two years, whereas Plaintiff had no prior Disney experience." (SUF 17).  Additionally, "Anuj had three 'Oracle professional certificate' certifications, while Plaintiff admittedly had none." (SUF 16).  To defeat summary judgment on her discrimination claims, therefore, Plaintiff must raise a genuine issue of material fact as to whether Defendant's reasons for declining to hire her—namely, that the candidate Defendant did choose had more relevant experience and more professional certifications— were pretextual.  As discussed above, Plaintiff has failed to present any such evidence in her opposition briefs.

The Court accordingly GRANTS summary judgment to the Defendant as to the claims regarding discrimination on the basis of age and national origin.

### B.  Discrimination on the Basis of Citizenship

Although the Immigration and Naturalization Act ("INA") prohibits employment discrimination based on citizenship, 8 U.S.C. §1324b, "§ 1324b does not provide for private causes of action in federal court," *see Lomeli v. Holder*, No. CV 09-4757 PSG (RCx), 2010 WL 11596151, at *3 (C.D. Cal. Aug. 25, 2010).  Furthermore, § 1324b "implicates judicial review only after

administrative procedures have been exhausted." *Id.* The Ninth Circuit has held that, "[b]efore an individual can instigate a private action" for employment discrimination based on citizenship status under the INA, "the claim first must be filed with the [Office of Special Counsel for Immigration Related Unfair Employment Practices ("OSC")]," or, "[i]f the OSC fails to file a complaint within 120 days of receiving the claim, the individual making the charge may initiate a private action before the [Office of the Chief Administrative Hearing Officer]." *General Dynamics v. U.S.*, 49 F.3d 1384, 1385 (9th Cir. 1995). Plaintiff has conceded that she has not done so.

The Court accordingly GRANTS Defendant's Motion for Summary Judgment as to the citizenship discrimination claim.

### IV. CONCLUSION

The Court, therefore, GRANTS Defendant's Motion for Summary Judgment.

**IT IS SO ORDERED.**

Dated: 8/19/20

Virginia A. Phillips
United States District Judge

17